UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TIMOTHY AUGUSTUS WARD                                              Plaintiff

v.                                              CIVIL ACTION NO. 3:16-CV-393-RGJ-RSE

KENNETH BORDERS, et al.,                                          Defendants

**MEMORANDUM OPINION AND ORDER**

Defendants Kenneth Borders ("Borders") and Scott Brown ("Brown") ("Defendants") [1]

move for summary judgment on Plaintiff Timothy Augustus Ward's ("Ward") claims relating to

their May 2016 arrest of Ward for disorderly conduct, menacing, and resisting arrest. [2] [DE 184].

Ward responded [DE 185], and Defendants replied [DE 186].   Defendants then moved to

reschedule the final pretrial conference and extend pretrial deadlines.   [DE 193].   Again, Ward

responded [DE 194], and Defendants replied [DE 195].   For the reasons below, Defendants'

motion for summary judgment [DE 184] is **GRANTED in part and DENIED in part**, and

Defendants' Motion to Reschedule Final Pretrial Conference and for Extension of Time for Pretrial

Filings [DE 193] is **GRANTED in part** and **DENIED in part**.

## I.      BACKGROUND

The Court incorporates the procedural and factual background set forth in its orders on

Defendants' motions to dismiss and Ward's motion to file a third amended complaint.   [DE 150;

DE 179].

---

[1] Defendants were Kentucky State Troopers at the time of these events.   [DE 184-1 at 1528].   Borders is
now a Special Agent at the U.S. Department of Homeland Security and Brown is now a Sergeant.   [*Id.*].
[2] Although Counsel attached a Memorandum in support of their motion [DE 184-1], the Joint Local Rules
for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum.
*See* Local Rule 7.1.   In the future, Counsel is advised to file a unified motion.

In May 2016, Borders pulled Ward over for traffic offenses. [DE 184-1 at 1530; DE 185 at 1717]. Borders asserts that after Ward swore at Borders for stopping him, Borders "gave [Ward] a break" and "issued him a citation for having no valid registration plates" and other minor traffic violations, rather than towing his vehicle. [DE 184-1 at 1530-31]. Ward states that he and "Borders had a disagreement which ultimately led to Borders commandeering Ward's license plate," but Borders allowed Ward to leave with his car. [*Id.* at 1531; DE 185 at 1717].

Ward then went to the police post to submit a complaint about the traffic stop. [DE 184-1 at 1531; DE 185 at 1718]. According to Defendants, Borders' superior Sergeant Burton was unavailable, so Brown volunteered to meet with Ward to hear his complaint. [DE 184-1 at 1531]. Ward expressed displeasure about the stop to Borders and Brown. [DE 184-1 at 1531-32; DE 185 at 1718]. In response, Defendants did not allow Ward to leave with his vehicle. [DE 184-1 at 1531-32; DE 1718]. The parties agree that following Ward's verbal confrontation, he was walking away until Borders told him to come back and that he was under arrest.[3] [DE 184-1 at 1533; DE 185 at 1725]. Ward turned and began walking towards Borders. [DE 184-1 at 1533; DE 185 at 1725]. Defendants assert that Ward had his hands raised, flailing, yelling and cursing in a "very agitated and angry" manner as he approached Borders. [DE 184-1 at 1533-34]. Defendants also assert that Ward ignored Borders' verbal commands. [*Id.*]. Ward, however, states that he "gave himself up" and that Borders "issued no verbal command." [DE 185 at 1725]. Borders then tased Ward, who fell to the ground. [DE 184-1 at 1534; DE 185 at 1725].

---

[3] Ward's briefing is somewhat contradictory, in that he states that "[n]either, [sic] Defendant ordered Mr. Ward to stop or that he was under arrest at this point," but also states that "Borders issued a command for Ward to come back [and] stated that Ward was under arrest." [DE 185 at 1719-20, 1725]. Ward's conflicting statement of facts does not create a genuine issue of material facts, and the Court adopts the version of events that the parties agreed upon.

The parties disagree on the next sequence of events.  Defendants assert that Ward "tucked his hands under his body and out of sight," refused to respond to commands, cursed at Borders, told Borders he had a heart condition, and "continued to resist being handcuffed."  [DE 184-1 at 1534].  Defendants contend that "Borders attempted to use the [pepper] spray" which "sputtered" instead of properly spraying.[4]  [*Id.* at 1534-35].  Defendants state that Borders then tasered Ward again, after which Ward was compliant.  [*Id.*].

Ward contends that he was immobilized after the first tasing and informed Borders of his heart condition.  [DE 185 at 1720].  Ward states that Borders then tased Ward for a second time, handcuffed him, and that Borders then pepper sprayed him.  [*Id.*].

Both parties agree that Brown did not stop Borders' use of force but disagree as to Brown's presence to do so.  Defendants argue that Brown did not witness the use of force because he did not arrive on scene until after Ward was tased and handcuffed.  [DE 184-1 at 1535].  In his initial pro se complaint Ward stated, "Brown and a dispatcher stood on the hill and watched Border[s] inflict harm." Ward further states that "after Border[s] was done pepper spraying Ward and after Border[s] tased Ward Brown came down in his police car." [DE 1 at 6].   In his Second Amended pro se Complaint Ward stated, "Brown was present during the vicious assault on Ward; Brown did nothing to stop Borders from assaulting him. Brown stood there and watched this happen . . ." [DE 101 at 916].  In his third amended Complaint filed by counsel, Ward stated that "Defendant Brown had a realistic opportunity to prevent Defendant Borders from using the taser and pepper spray upon Mr. Ward." [DE 151 at 1407].  In his summary judgment response Ward asserts that "Brown arrived before the second Taser use."  [DE 185 at 1720].  In his affidavit attached to his summary

---

[4] The parties refer to pepper spray interchangeably as "OC spray."  OC spray is "oleoresin capsicum spray" and is colloquially known as pepper spray. *Greene v. Barber*, 310 F.3d 889, 893 (6th Cir. 2002).

3

judgment response, he asserts that Brown arrived at the scene around the time he had been tased the first time and told Borders he had a heart condition and diabetes, and asserts that Brown was at least present before the pepper spray was deployed. [DE 185-2 at 1736-37]. Beyond Defendants' affidavit from the dispatcher,[5] neither party cites support beyond their own sworn statements.

Ward later pleaded guilty to disorderly conduct and stipulated to probable cause for disorderly conduct, menacing, and resisting arrest. [DE 116-1; DE 116-2; DE 179]. He filed this action in 2016, after his arrest but before his guilty plea in 2017. [DE 1; DE 116-1].

Upon preliminary review of the original complaint, the Court dismissed many of Ward's pro se claims. [DE 30]. Ward has since amended his complaint three times [DE 34; DE 101; DE 151] and changed counsel status three times [DE 118; DE 166; DE 174]. At various times throughout this action, the Court has dismissed defendants and claims. [*See* DE 150 at 1381-83 (summarizing the procedural background)]. The Court last analyzed Ward's complaint on a partial motion to dismiss. [DE 179]. The remaining claims against Borders and Brown are a § 1983 First Amendment retaliatory arrest claim, a § 1983 Fourth Amendment excessive force claim, and state

---

[5] Dispatcher Amanda L. Decker's (née Siler) ("Decker") affidavit essentially agrees with Borders' recollection of events. She states that Borders conducted a traffic stop of Ward and that Ward then called the police post and was "extremely irate." [DE 184-5 at 1713]. Decker recollects that when she left the post that day she could hear Ward "screaming/yelling loudly" heard Brown ask him "to leave the post parking lot and that he would not be driving his vehicle." [*Id.*]. Decker states that "Ward continued to yell, curse and then started to walk away but then turned around and started to walk back . . . towards Trooper Borders . . . yelling with his hands up in the air and moving them around." [*Id.* at 1713-14]. She characterizes Ward as "very agitated and angry." [*Id.* at 1714].

law claims for assault, battery, and punitive damages.  [*Id.*].  Defendants moved for summary judgment on all remaining claims [DE 184], and Ward responded through counsel [DE 185].[6]

## II.    STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party must produce specific facts showing a material issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion."  *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations but must view the evidence and draw all reasonable inferences in a light most favorable to the non-moving party.  *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).  The non-moving party must do more than show some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-

---

[6] The Court notes Ward's argument that Defendants "try to smear [him] with inadmissible and partially incorrect information regarding other litigation" in their statement of facts when they say he has "a long history of vexatious lawsuits." [DE 184-1 at 1528; DE 185 at 1717].  Defendants cite several cases.  Ward states that he "asked Defendants for proof regarding these other lawsuits," which they "refused to answer," and that "[t]here is another man named Timothy Ward in Hardin County." [DE 185 at 1717].  Although Ward does not explain how Defendants' information is "partially incorrect," this dispute and Ward's counterarguments to it are irrelevant to the Court's analysis.

moving party must show a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(A)–(B); *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

### III. DISCUSSION

Ward argues that Count One of his Third Amended Complaint "alleges the use of excessive force in violation of the Fourth Amendment's prohibition of unreasonable seizures." [DE 185 at 1722]. Defendants accept this premise and argue for summary judgment on this claim. [DE 184-1 at 1538].

### 1. Defendants' Motion for Summary Judgment [DE 184].

#### a. *Qualified Immunity and Constitutional Claims*

Borders and Brown argue that they are entitled to summary judgment on Ward's constitutional claims both because they are entitled to qualified immunity and because Ward's rights were not violated. [DE 184-1 at 1529]. Ward focuses his response on the standard for qualified immunity, arguing that Defendants' actions were not objectively reasonable, so they cannot meet the standard for summary judgment. [DE 185 at 1722-33]. Although Ward's First and Fourth Amendment claims are stated in a single count and are based on the same incident, such claims are distinct causes of action, and the Court will analyze them separately.

#### i. *First Amendment Retaliation Claim*

Ward does not respond to Defendants' argument that they are entitled to qualified immunity and summary judgment on Ward's First Amendment retaliation claim. Because Ward

does not address Defendants' argument, Defendants are entitled to summary judgment on this claim.  [DE 184-1; DE 185]; *see Rouse v. Caruso*, No. 06-CV-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011), *report and recommendation adopted,* No. 06-CV-10961, 2011 WL 893216 (E.D. Mich. Mar. 14, 2011) ("It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  Yet the Court will consider the merit of this claim.

To establish a claim of First Amendment retaliation, a plaintiff must prove "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [plaintiff's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (en banc)). The Supreme Court has reasoned that the existence of probable cause is essential to the causation element of a retaliation claim.  *Hartman v. Moore*, 547 U.S. 250, 263 (2006) ("[S]ome evidence must link the allegedly retaliatory official to a [government official] whose action has injured the plaintiff.  The connection, to be alleged and shown, is the absence of probable cause.").  Viewing the totality of the circumstances, "probable cause exists only when the police officer 'discovers reasonably reliable information that the suspect has committed a crime.'"  *Courtright v. City of Battle Creek*, 839 F.3d 513, 521 (6th Cir. 2016) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)).

It is undisputed that Ward engaged in First Amendment protected conduct by swearing at, to, or about Borders, and that Defendants took an 'adverse action' by arresting Ward.  *See Lowery v. Euverard*, 497 F.3d 584, 587–588 (6th Cir. 2007)) (recognizing that the First Amendment

encompasses criticism of government officials); *and Davis v. Walleman*, 596 F. Supp. 3d 877, 893 (E.D. Mich. 2022), *appeal dismissed,* No. 22-1362, 2023 WL 3625671 (6th Cir. May 24, 2023) ("an arrest is an adverse action that could deter a person of ordinary firmness from exercising his or her rights").  Thus, at dispute is the causation element; Ward contends Defendants arrested him because he "call[ed] Defendant Borders derogatory names," while Defendants assert that they arrested Ward for disorderly conduct.  [DE 151 at 1410; DE 184-1 at 1529

The Supreme Court "has never recognized a First Amendment right to be free from retaliatory arrest that is supported by probable cause; nor was such a right otherwise clearly established at the time of [the plaintiff's] arrest."  *Reichle v. Howards*, 566 U.S. 658 (2012).

The parties highlight the following exchange between Ward and Borders at the Hardin District Court.  Ward argues that the exchange is proof the arrest was retaliatory while Defendants argue that it supports their assertion that the arrest was not retaliatory.

> Mr. Ward: You said you arrested me because I swore at you?
> Trooper Borders: No.
> Mr. Ward: I used profanity.
> . . .
> Mr. Ward: You testified I called you a fucking pussy and you arrested me.  Is that correct?
> Trooper Borders: Absolutely. . .
> Mr. Ward: It seems like what you arrested me for.
> Trooper Borders: I arrested you because of you conducted yourself disorderly in public.
> Mr. Ward: If I didn't say that word, would you have arrested me?
> Trooper Borders: (Shrugs) That's unclear.

[DE 149-1 at 20-21].  But the Court need not make further factual findings on probable cause because it has already ruled on this issue as a matter of law.  [DE 179].  Ward pleaded guilty and stipulated to probable cause for the arrest, so his arrest was supported by probable cause.  [DE 116-1; DE 116-2; DE 179 at 1505-1510]; *see also Helfrich v. City of Lakeside Park*, No. CIV.A.

2008-210 WOB, 2010 WL 3927475, at *1 (E.D. Ky. Oct. 4, 2010) ("pleading guilty to a criminal charge estops the plaintiff from challenging probable cause for the arrest for that violation for purposes of a section 1983 claim").  "Because there was probable cause to arrest [him], his retaliatory arrest claim fails as a matter of law."[7]  *Nieves*, 139 S. Ct. 1715; *see also Hartman v. Thompson*, 931 F.3d 471, 483 (6th Cir. 2019) ("if an officer has probable cause to arrest, Plaintiffs cannot maintain an action for false arrest"); *Fannon v. Patterson*, No. 3:13-CV-14, 2014 WL 4273337, at *4 (S.D. Ohio Aug. 29, 2014) (finding plaintiff's "First Amendment retaliation claim must fail in light of the fact that he was convicted of certain offenses in the underlying traffic and criminal cases after entering guilty pleas in exchange for the dismissal of the remaining charges"); *and Aliakbarkhananfjeh v. Schramm*, 194 F.3d 1311 (6th Cir. 1999) (Only where "the alleged retaliatory charges bear no factual relationship to the charge of conviction" and has "no colorable basis in fact" will "a plea to an unrelated, reduced charge [not] . . . defeat a claim of retaliation under the First Amendment."). [DE 179].[8]  Borders and Brown are entitled to qualified immunity because of Ward's concession at his plea.  Additionally, because Ward's arrest was admitted at his

---

[7] There is a narrow exception—the *Nieves* exception—"for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so."  *Nieves* at 1727.  The Court first notes that Ward has not pled that this is such a situation.  Even so, the *Nieves* exception could not apply here "because the officers would not have been aware of it at the time of [Ward's] arrest since the case was decided later."  *Novak v. City of Parma*, 932 F.3d 421, 430 (6th Cir. 2019).  As the exception could not apply, the showing of probable cause for Ward's arrest defeats his First Amendment retaliatory arrest claim. *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019); *see also  Staples v. Jillerat*, No. 1:17-CV-742, 2018 WL 3762557, at *4 (S.D. Ohio Aug. 8, 2018), *report and recommendation adopted,* No. 1:17-CV-742, 2018 WL 4761572 (S.D. Ohio Oct. 2, 2018) ("The Sixth Circuit has held that where there is probable cause for an arrest, a First Amendment retaliation claim fails as a matter of law.") (citing *Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006) *and Hightower v. City of Columbus*, No. 2:12-CV-437, 2013 WL 5963215, at *6–7 (S.D. Ohio Nov. 7, 2013), *aff'd* (Oct. 3, 2014)).

[8] Ward does not support an argument that any other action, such as "refusing to let him drive home even though Ward had been allowed to do so earlier," was an adverse action.  [DE 185 at 1725].  Even if he had, the Court would find, as it did above, that there was no causation.

plea to be supported by probable cause, Ward's First Amendment claim against Borders and Brown also fails on its merits, and summary judgment on this claim is **GRANTED**.

### ii.   Fourth Amendment Excessive Force

Defendants argue the Court should grant summary judgment because they are entitled to qualified immunity on Ward's Fourth Amendment excessive force claim and because they acted reasonably.  [DE 184-1].  Ward disagrees.  [DE 185].

### A.   Standard

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known."  *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).  It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  When advanced by a defendant, qualified immunity is a threshold question of law appropriately determined on a motion for summary judgment.  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The plaintiff bears the ultimate burden of proof in establishing that a defendant has no right to qualified immunity.  *See Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991)).  That said, in moving for summary judgment based on qualified immunity, a defendant must first show "facts to suggest that he acted within the scope of his discretionary authority during the incident in question."  *Id.* The burden then shifts to the plaintiff to show "that the defendant's conduct violated a right so

clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Est. of Hill by Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017).  If "undisputed facts show that the defendant's conduct did indeed violate clearly established rights[,]" or "if there is a factual dispute . . . involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights[,]" a court must deny summary judgment.  *Gardenhire*, 205 F.3d at 311 (quoting *Poe v. Haydon*, 853 F.2d 418, 425–26 (6th Cir. 1988) (citations omitted)).

The Supreme Court requires a two-pronged approach when resolving questions of qualified immunity, although courts may decide the order in which to address these prongs "in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.  First, the Court must decide whether a plaintiff has presented facts sufficient to find a violation of a constitutional right. *Id.* at 232.  The Court views this evidence in the light most favorable to the plaintiff.  *See Shreve*, 743 F.3d at 134.  Second, the Court must decide whether the right at issue was "clearly established" at the time of the alleged misconduct.  *Pearson*, 555 U.S. at 232.  Thus, qualified immunity applies unless the official's conduct violates a clearly established constitutional right.  *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  If the Court finds that the plaintiff's right was not clearly established, the Court can start with the second factor and does not "need to determine whether the alleged conduct was in fact unconstitutional."  *Schulkers v. Kammer*, 955 F.3d 520, 532 (6th Cir. 2020) (citing *Pearson*, 555 U.S. at 236–43)).

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  Generally, "[t]he Fourth Amendment's

11

prohibition against unreasonable seizures bars excessive force against free citizens." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citations omitted). A claim of excessive force in "an arrest, investigatory stop, or other 'seizure'" is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham*, 490 U.S. at 388. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396.

The court must pay "careful attention to the facts and circumstances of each particular case," *id.*, and "consider the difficulties of modern police work," *Smith v. Freland*, 954 F.2d 343, 346 (6th Cir. 1992), when evaluating whether an officer acted reasonably during an arrest. A court must consider the totality of the circumstances when evaluating the objective reasonableness of the arrest. *Smith v. City of Troy, Ohio*, 874 F.3d 938, 943 (6th Cir. 2017). "[T]he question is whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. Three important, non-exhaustive factors guide this analysis: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006) (citing *Graham*, 490 U.S. at 396). "We do not scrutinize whether it was reasonable for the officer to create the circumstances" when analyzing an excessive force claim. *Thomas v. City of Columbus, Ohio*, 854 F.3d 361, 365 (6th Cir. 2017).

### B.   Analysis

Ward disputes whether Defendants' use of force was objectively reasonable.  [DE 185].

Ward was tased twice and pepper sprayed.[9]  Ward has provided no evidence that Brown applied

any use of force and only argues in his factual summary that Borders was the single source of

excessive force.  Thus, because Brown applied no force, he is entitled to summary judgment on

Ward's excessive force claims.  *See Bruck v. Petry*, No. CV 5:21-152-DCR, 2022 WL 2109187,

at *5 (E.D. Ky. June 10, 2022), *appeal dismissed,* No. 22-5550, 2022 WL 11367954 (6th Cir. Aug.

15, 2022) (dismissing excessive claims against officer where plaintiff "has provided no evidence

that [the officer] applied [any] use of force").

### a.   Qualified Immunity

Borders argues that he is entitled to qualified immunity because "the unconstitutionality of

Trooper Borders' use of force [is not] 'beyond debate' under the existing law and facts."  [DE 184-

1 at 1550].  Ward argues that he has presented facts sufficient to find a violation of the clearly

established right to be free of excessive force.  [DE 185 at 1722-33].  He cites several cases that

establish that using a taser on a suspect that is complying is objectively unreasonable and thus a

clearly established constitutional right.  [*Id.*].

The Sixth Circuit has "repeatedly stated that the right to be free from excessive force is a

clearly established Fourth Amendment right."  *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893,

902 (6th Cir. 2004) (citations omitted).  Using a taser or pepper spray on a noncompliant suspect

is not excessive force.  *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) ("Our cases firmly

establish that it is not excessive force for the police to tase someone (even multiple times) when

---

[9] Ward's claim for Fourth Amendment excessive force only encompasses Defendants use of *force* and not,
for example, whether Defendants were objectively reasonable in not allowing Ward to leave with his car.

the person is actively resisting arrest."); *see also Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002) (pepper spray use was reasonable when the plaintiff resisted arrest and then physically resisted arrest by walking away).  The use of a taser or pepper spray on a compliant suspect is excessive force.  *See Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012) ("By contrast, when we have found excessive force, the suspects were compliant or had stopped resisting."); *and Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994) (the use of mace on a compliant suspect is constitutionally unreasonable).  Active resistance includes "physically struggling with, threatening, or disobeying officers," *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012) (collecting cases), and "refusing to move your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance." *Rudlaff*, 791 F.3d at 641.  Active resistance does not include being "compliant or hav[ing] stopped resisting," *Hagans*, 695 F.3d at 509; or having "done nothing to resist arrest," or having "already [been] detained," *Cockrell*, 468 F. App'x at 496 (collecting cases).

If Ward was not resisting arrest before the first taser use, or if he stopped resisting arrest after the first taser use, then either taser use, the pepper spray, or all three could have been excessive force.[10]  As the Court discusses below, the parties submitted conflicting sworn statements about when Ward was resisting arrest and when or if he stopped resisting arrest.  The Court cannot resolve credibility assessments on summary judgment.  *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 804 (6th Cir. 2015).  Ward's Fourth Amendment case turns on a credibility

---

[10] The Court is "mindful that 'some of [the Sixth Circuit] cases analyze excessive force claims in segments,' an approach that potentially requires [the Court] to evaluate the Taser shocks independently." *Kijowski v. City of Niles*, 372 F. App'x 595, 600 (6th Cir. 2010) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996)).  The Court "nonetheless refer to the shocks collectively, as [the] analysis is applicable to both." *Id.*

14

determination. "Thus, this Court is faced with a question of fact, rather than a question of law, and cannot find that Defendant[] [is] entitled to qualified immunity." *Thomas v. Arnold*, 696 F. Supp. 2d 882, 885 (N.D. Ohio 2010), *on reconsideration,* No. 3:09 CV 716, 2010 WL 1490302 (N.D. Ohio Mar. 31, 2010. The question both for qualified immunity and for the ultimate issue, as discussed below, is a factual question regarding Ward's resisting arrest and the surrounding timeline, and will be submitted to the jury.[11]

### b. Reasonable Force

Borders argues that Ward's stipulation to probable cause for menacing and resisting arrest shows that the amount of force exerted was reasonable and that even if he had not stipulated to probable cause, the undisputed facts demonstrate that he acted objectively reasonably. [DE 184-1 at 1541-44]. Ward asserts that Borders is not entitled to summary judgment because there is no proof that Ward resisted arrest or was noncompliant, but instead "at the time of his Tasing he was attempting to comply and turn around to be handcuffed." [DE 185 at 1728]. Ward argues that the facts do not show he was noncompliant, so Defendants' use of a taser was unreasonable. [*Id.*].

"It is clearly established in this Circuit that the use of a Taser on a non-resistant suspect constitutes excessive force." *Kent v. Oakland Cnty.*, 810 F.3d 384, 396 (6th Cir. 2016) (internal quotation marks omitted); *see also Brown v. Weber*, 555 F. App'x 550, 554–55 (6th Cir. 2014) (holding that tasing a suspect who "posed little to no immediate threat to the safety of the officers

---

[11] The Court notes that the qualified immunity defense, while a question of fact here, will not be presented to a jury. *See Wesley v. Rigney*, No. CV 10-51-DLB-JGW, 2016 WL 853505, at *7 (E.D. Ky. Mar. 3, 2016), *aff'd sub nom. Wesley v. Campbell*, 864 F.3d 433 (6th Cir. 2017) ("any defense presented to the jury cannot be qualified immunity, because the doctrine is an entitlement from suit, rather than a mere defense to liability"). Rather, this is a case in which the factual issue—Ward's compliance and the timeline for such— "is so intertwined with the legal question that the resolution of that legal question first requires a jury to settle [this] factual dispute." *Id.* Thus, while the factual question will be submitted to the jury, the qualified immunity defense will not be considered by the jury.

or others" and who "was unarmed, not making verbal threats, and sitting . . . in the fetal position" violated the suspect's clearly-established constitutional rights).

The parties' versions of events differ.  Ward argues that he surrendered to arrest.  He states that he "was not physically resisting [or] attempting to flee," and that Borders "stated that Ward was under arrest" but "issued no verbal command."  [DE 185 at 1719, 1725].  Ward contends that Borders tased him once, which knocked him to the ground, then Borders tased him a second time and handcuffed him, then pepper sprayed him in the face.  [*Id.* at 1720].

Borders argues that Ward was yelling profanities in public, so Borders informed Ward he was under arrest and "told [Ward] to stop," at which point Ward began walking toward Borders "with his hands raised to 'chest level.'"  [DE 184-1 at 1532-34].  Borders contends that Ward "continued to walk toward Border[s] with his hands at his chest" while yelling, cursing, and ignoring commands.  [*Id.*].  Borders alleges that under Ward's own version of events, after Borders told Ward he was under arrest, "Ward continued to walk toward Border[s] with his hands at his chest."  [DE 34 at 3; DE 186 at 1774].  Borders argues that he tased Ward for five seconds, and then "Ward refused to show his hands, which were concealed under his body and continued to present a threat to Trooper Borders."  [DE 186 at 1774].  Borders then contends that he tried to pepper spray Ward, which failed, so he then tased Ward again because he "was resisting and still a danger to Trooper Borders, because he refused to show his hands or allow handcuffing."  [*Id.*].

The Court need not analyze the factual situation to determine whether Ward was resisting arrest because when Ward pleaded guilty to disorderly conduct he stipulated to the fact that Borders had probable cause to arrest him for disorderly conduct, resisting arrest, and menacing. [DE 116-1; DE 116-2 at 1219; DE 179].  As the Court has analyzed, Ward cannot now argue that Borders did not have probable cause to believe he was resisting arrest.  [*See* DE 179].  The Court

16

finds that Borders had probable cause to believe Ward was resisting arrest at some point in the confrontation.

But Ward's stipulation does not confirm *when* Ward was resisting arrest. The use of a taser or pepper spray was unreasonable force if Ward was compliant when Borders used such on him. *See Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015) ("When a suspect actively resists arrest, the police can use a taser (or a knee strike) to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot."); *and Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994) (the use of mace on a compliant suspect is constitutionally unreasonable). Conversely, such use was reasonable if Ward was noncompliant at the time. *See Caie v. W. Bloomfield Twp.*, 485 F. App'x 92 (6th Cir. 2012). (It was reasonable force when, after two officers wrestled the suspect to the ground, he refused to move his arms from under his body, prompting a third officer to tase him.); *and Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002) (pepper spray use was reasonable where the plaintiff verbally resisted arrest and then physically resisted arrest by walking away).

Although Defendants point to Ward's stipulation to support the fact that Borders had probable cause to arrest him, his stipulation to probable cause does not mean that he stipulated to Borders' version of events. Ward's stipulation of probable cause does not include specific facts regarding the timeline for resisting arrest, and the parties have submitted no written or oral factual basis for the plea. [DE 144-Exhibit A (conventionally filed), Ward's Guilty Plea]. In support of their arguments, the parties otherwise cite nearly exclusively their own sworn statements. Under Ward's sworn statement, he claims that he "never made any threats or aggressive movements," that each tasing and the pepper spraying were done while he was compliant, and that he was pepper sprayed after being handcuffed. [DE 185-2]. Under Borders' sworn testimony, Ward was

17

aggressive, agitated, and noncompliant when he executed the taser and attempted pepper spray.[12] [DE 184-1 at 1533-44; DE 184-2].  The parties' conflicting statements on when Ward stopped resisting arrest present a factual dispute based on sworn statements and thus credibility determinations.  Credibility determinations are inappropriate for resolution at the summary judgment stage.  *Rhinehimer*, 787 F.3d at 804.  Thus, on summary judgment the Court cannot resolve the factual dispute surrounding the timeline—that is, determining at what point was Ward resisting arrest and at what point was he compliant.

Ward's "claim of excessive force admittedly comes close to the 'scintilla of evidence' of excessive force [the Sixth Circuit] has previously found to be insufficient to survive summary judgment." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 253 (6th Cir. 2010).  But because the evidence before the Court is conflicting sworn affidavits and testimony, the Court finds that there is a genuine issue of material fact as to whether the taser and pepper spray use was reasonable.  This question will be for the jury to decide.

### c.   Failure to Intervene

Ward puts forth a short argument that Brown is liable for failing to intervene.  "Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).  "Where an act of excessive force unfolds in a matter of seconds, the second requirement is generally not satisfied." *Pennington v.*

---

[12] Borders also cites the dispatcher's affidavit, in which she stated that Ward was agitated and angry but does not confirm he was resisting arrest.  [DE 184-1 at 1542-43].

*Terry*, 644 F. App'x 533, 548 (6th Cir. 2016) (noting that there is generally insufficient time to intervene in types of excessive force lasting less than ten seconds).

It is disputed when Brown arrived at the scene and is unclear whether Brown observed any of the use of force from his vantage point or could have intervened.  Between his complaints and the briefing for this motion, Ward puts forth three versions of events.  In his initial pro se complaint Ward stated, "Brown and a dispatcher stood on the hill and watched Border[s] inflict harm" and that "after Border[s] was done pepper spraying Ward and after Border[s] tased Ward Brown came down in his police car."  [DE 1 at 6].   In his Second Amended pro se Complaint Ward stated, "Brown was present during the vicious assault on Ward; Brown did nothing to stop Borders from assaulting him.  Brown stood there and watched this happen . . ."  [DE 101 at 916].  In his third amended Complaint filed by counsel, Ward stated that "Defendant Brown had a realistic opportunity to prevent Defendant Borders from using the taser and pepper spray upon Mr. Ward." [DE 151 at 1407].  In his summary judgment response Ward asserts that "Brown arrived before the second Taser use."  [DE 185 at 1720].  In his affidavit attached to his summary judgment response, Ward asserts that Brown arrived at the scene around the time he had been tased the first time and told Borders he had a heart condition and diabetes, and asserts that Brown was at least present before the pepper spray was deployed. [DE 185-2 at 1736-37].  Borders' and Brown's versions also differ from each other—for example, Borders testified that the arrest and proceeding events occurred in the Cracker Barrell parking lot, while Brown testified that the events occurred in the "grassy area" identified on a map attached to his deposition.  [*See* DE 184-2 at 1572; DE 184-3 at 1658].

In order to say that Brown had no ability to intervene, the Court would have to choose between the versions of events that the parties have put forward and conclude that it would be

unreasonable for a jury to find that Brown had an opportunity to intervene in any of them. Even if the Court were to choose one of Ward's versions, the Court would have to choose between Borders' and Brown's recitation of events and decide whether the facts suggest that Brown had an opportunity to intervene.  Both the spatial difference—where Brown physically was during the altercation—and the timing—when Brown appeared on scene—are factual differences at issue that may have affected Brown's ability to intervene or instruct Border's not to proceed to use his taser or pepper spray.  For example, if Brown stood on the hill the entire time, his ability to intervene may have been different or taken a different manner than had he physically arrived before the pepper spray was deployed.  While deciding whether Brown had the opportunity to intervene is a close call, the Court lacks sufficient information before it to determine that no reasonable juror could decide Brown did not have such opportunity.

The Court notes the factual situation in *Turner*, 119 F.3d at 429.  In that case, the Sixth Circuit concluded "no jury could possibly be permitted to find that Officer Scott knew or should have known about the initial impact" and so could not find "that Officer Scott knew or should have known that there would be a second." *Id.*  The Court reasoned "[i]f he was entirely unaware of the first impact, he could hardly have prevented the second." *Id.*  Ward's case is distinguishable. In *Turner*, the officer that allegedly failed to intervene had no context to suggest that force may be used.  *Id.*  Here, Brown had significant context for the taser strikes and possibly could have had both the opportunity and means to prevent Borders' use of force.  Thus, there is a factual issue on the timing and whether Brown had the ability to intervene.  Similarly, it is unclear here that the events occurred within seconds without opportunity to intervene or that they "occurred 'at two discrete, fleeting points in time' and did not develop into an 'extended string of abuses.'" *See also Wells v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013).

Whether Brown had observed or had reason to know, or had the time or opportunity to intervene, is a question of fact under these circumstances for the jury. Under these circumstances, "a jury could reasonably infer that [Brown] (1) w[as] personally involved in the alleged use of excessive force or (2) failed to intervene to prevent it." *Burley v. Gagacki*, 729 F.3d 610, 622 (6th Cir. 2013).

The Court thus **DENIES** summary judgment on the Fourth Amendment claim against Brown.

### iii.  State Law Claims: Assault, Battery, and Punitive Damages

Defendants argue the Court should grant summary judgment in their favor on Ward's state law claims because their use of force was justified based on the same argument as above.  [DE 184-1 at 1543-46].  In response, Ward argues that Defendants are not entitled to immunity at the state level and that the Court "must acknowledge that Defendants maliciously used force against Ward in response to Ward's behavior that they found objectionable, but was not otherwise deserving of force."  [DE 185 at 1733].  Ward states that his "claim for battery should be obvious as he never consented to any touching the night of this incident" and "[h]is claims for negligence should also succeed as any reasonable officer knows that maliciously depriving someone of their rights is against the law."  [*Id.*].  Ward does not expand on his argument for the survival of his state claims.  [*Id.*].

In Kentucky, assault and battery are distinct and independent torts.  *Leath v. Webb*, 323 F. Supp. 3d 882, 902 (E.D. Ky. 2018); *Ali v. City of Louisville*, No. 3:03CV-427-R, 2006 WL 2663018, at *4 (W.D. Ky. Sept. 15, 2006).  Though "[a]ssault . . . merely requires the threat of unwanted touching of the victim," "battery requires an actual unwanted touching."  *Banks v.*

*Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001). "The use of excessive force by a police officer constitutes the intentional tort of battery." *Ali*, 2006 WL 2663018, at *8.

Though the Kentucky qualified immunity analysis is slightly different than its federal counterpart, *see Coitrone v. Murray*, 642 F. App'x 517, 524 (6th Cir. 2016), the result here is the same. Kentucky's equivalent of qualified immunity protects officers that make "good faith judgment calls [ ] in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). It protects officers for "(1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . . (2) [made] in good faith; and (3) within the scope of the employee's authority." *Id.* "[B]ad faith can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, i.e., objective unreasonableness[.]" *Id.* at 523.

The analysis, here, tracks the federal reasoning. "On this record, a reasonable juror could find that [Borders'] use of force, . . . sanctioned by [Brown], was objectively excessive and thus unreasonable under the circumstances, constituting a battery claim under Kentucky law." *Mills v. Owsley Cnty. Kentucky*, 483 F. Supp. 3d 435, 477 (E.D. Ky. 2020) (citing *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1973) (describing reasonable force as "no more force than was reasonably necessary, or so appeared to him in the exercise of reasonable judgment" under the circumstances)). A reasonable juror could likewise find that, for the reasons previously discussed, Ward's right to be free from such force in this particular scenario was clearly established at the time of the events at issue. "This would equate to bad faith, for state immunity purposes." *Id.* The Court thus denies qualified immunity, and the state battery claim survives for jury review.

22

As stated above, Borders had probable cause to arrest Ward.  But a genuine issue of material fact exists as to the timeline for the force used, creating an issue of fact as to whether the force was reasonably necessary or whether Brown could have intervened.  *See Leath v. Webb*, 323 F. Supp. 3d 882, 903 (E.D. Ky. 2018) (allowing state claims of assault and battery where there was "a genuine dispute as to whether [defendant] used more force than was reasonably necessary during the arrest"); *and Walker v. City of Lebanon, Ky.*, No. 3:12-CV-855-H, 2013 WL 6185402, at *12 (W.D. Ky. Nov. 25, 2013) (defendants were not entitled to qualified immunity where "the Court cannot conclusively determine whether the officers used excessive force, such that Plaintiff's constitutional rights were violated").

The Court thus **DENIES** summary judgment as to Ward's state claims.

### 2. Defendants' Motion to Reschedule Final Pretrial Conference and for Extension of Time for Pretrial Filings [DE 193].

Defendants ask the Court to reschedule the pretrial compliance deadlines including witness lists, exhibit lists, motions in limine, pretrial memorandums, jury instructions, and proposed voir dire.  [DE 193 at 1825].  They argue that the "outcome of the pending motion for summary judgment is likely to change the issues and evidence at trial, or to affect the trial date, either by disposing of certain issues or by requiring an interlocutory appeal by the Defendants."  [*Id.* at 1825–26].  Defendants contend that it "would be a waste of resources of both the Court and the parties to file trial preparation documents before dispositive motions have been decided."  [*Id.*].  Ward contests the motion and argues that counsel did not contact his counsel "before filing his motion for extension of time after business hours on the date pretrial filings were due," giving them "a free look at Plaintiff's trial strategy."  [DE 194 at 1828].  He also argues that "one of the issues for the current pretrial conference is to discuss any outstanding summary judgment issues."

[*Id.*].  Defendants argue in reply that "the deadline had been incorrectly calendared on the Office of Legal Services calendar" and that "Plaintiff's counsel did not reach out to Defendants counsel to come to agreement on proposed jury instructions, as required by the scheduling order, or else Defendants counsel would have realized the mistake."  [DE 195 at 1830].  Neither party suggests a standard for amending the Court's scheduling order, although Defendants argue that they "have shown good cause for an extension of the deadlines for pretrial filings."  [DE 195 at 1831].

Under Fed. R. Civ. P. 6(b) and Fed. R. Civ. P. 16(b)(4), upon a timely motion, the Court may amend the Scheduling Order "for good cause and with the judge's consent."  Fed. R. Civ. P. 6(b); 16(b)(4).  In evaluating whether a party has shown "good cause," the primary consideration is "the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)); *see also* Fed. R. Civ. P. 16(b) advisory committee's note to 1983 amendments ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").  Fed. R. Civ. P. 6(b)(1) provides that the court may for good cause extend the time to do an act if the request is made before the original time to do the act expires.  Fed. R. Civ. P. 6(b)(1).

If the time to act has expired, the party must file a motion establishing that it failed to act because of excusable neglect.  *Id.* at 6(b)(1)(B).  The Sixth Circuit has explained that in evaluating whether a party has shown excusable neglect, the Court must balance five factors: "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith."  *Nafziger v.*

24

*McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

While the motion was submitted before the deadline's expiration, Defendants waited until after business hours on the day of the pretrial filings deadline to request an extension.  [DE 193 at 1825].  Still, the Court considers the motion timely and analyzes it under Fed. R. Civ. P. 6(b).

The instant order rules on the summary judgment motion and Defendants' request to reschedule after the Court's ruling on the dispositive motion is thus moot.  And counsel's failure to properly calendar deadlines does not rise to the level of good cause.  *See Smith v. T. Marzetti Co.*, No. 118CV00089GNSHBB, 2019 WL 4044024, at *3 (W.D. Ky. Aug. 27, 2019) (finding no good cause to amend where attorney improperly calendared deadline, stating, "[c]arelessness or attorney error is insufficient to constitute good cause under Rule 16(b) . . . even under the less demanding "excusable neglect" standard in Fed. R. Civ. P. 6(b)(1)(B) an attorney's calendaring error will not ordinarily support a favorable outcome"); *and Blazer v. Chrisman Mill Farms, LLC*, No. 5:17-CV-430-DCR-REW, 2018 WL 1089274, at *2 (E.D. Ky. Feb. 28, 2018) (collecting cases on excusable neglect).

Defendants have thus not demonstrated good cause for rescheduling the pretrial conference or the trial date, and the Court thus denies the request.  The Court will not reschedule the pretrial conference or the trial date.  The parties are allowed until August 11, 2023, two business days before the pretrial conference, to file their pretrial documents.  Thus, Defendants' Motion to Reschedule Final Pretrial Conference and for Extension of Time for Pretrial Filings [DE 193] is **GRANTED in part** and **DENIED in part**.

## IV.    CONCLUSION

25

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Defendants' Motion for Summary Judgment [DE 184] is **GRANTED in part and DENIED in part**;

(2) The claims remaining against Brown and Borders are a § 1983 *Fourth Amendment Excessive Force* claim and state claims for battery, assault, and punitive damages;

(3) Defendants' Motion to Reschedule Final Pretrial Conference and for Extension of Time for Pretrial Filings [DE 193] is **GRANTED in part** and **DENIED in part**;

(4) The Final Pretrial Conference remains scheduled for **August 15, 2023** in Louisville Courtroom;

(5) The parties are allowed until August 11, 2023 to file their trial documents.

Rebecca Grady Jennings, District Judge

United States District Court

August 9, 2023

Cc: Counsel of record